IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDWARD ABERNATHY            )
                            )
            Plaintiff,      )
                            )
vs.                         )
                            )   Case No. 19-cv-1207-RJD
CHARLES W. HECK, et al.,    )
                            )
            Defendants.     )
                            )
                            )

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 91 and 92). Plaintiff responded (Docs. 101 and 102). Defendants filed a Reply (Doc. 108). As explained further, Defendants' Motion is GRANTED.

Background

Plaintiff filed this lawsuit on November 4, 2019 (Doc. 1). At that time, he was incarcerated within the Illinois Department of Corrections at Pinckneyville Correctional Center (*Id.*). In his Complaint, he alleged that he received false disciplinary tickets on October 3, 4, and 23, 2019 and that he was denied due process at a disciplinary hearing (Doc. 1, p. 10). Plaintiff filed his original Complaint three times (Docs. 1, 9, and 40). The Court struck the Complaint twice because Plaintiff did not sign it (Docs. 5 and 33). On his third filing, Plaintiff signed the Complaint; at that point, it was 15 pages longer than when he originally filed it (Doc. 40, p. 12-26). The additional 15 pages consisted of grievance records that were submitted *after* Plaintiff originally filed his complaint on November 4, 2019 (*Id.*). The Court conducted a threshold review of Plaintiff's signed Complaint pursuant to 28 U.S.C. §1915A, and on March 16, 2020, dismissed

it for Plaintiff's failure to make "simple, concise, and direct" allegations. Fed. R. Civ. P. 8(d)(1). However, the Court appointed Plaintiff counsel and ordered him to file a First Amended Complaint (Doc. 52). Plaintiff was released from custody on February 5, 2021 (Doc. 92-1. Through counsel, Plaintiff filed his First Amended Complaint on February 16, 2021 (Doc. 71).

In the First Amended Complaint, Plaintiff alleges that on October 3, 2019, Defendant Belford issued him a false disciplinary ticket for "unauthorized movement and disobeying a direct order (*Id*. at ¶¶19-21). The next day, Defendant Mims issued Plaintiff another false disciplinary ticket for unauthorized movement and disobeying a direct order (*Id*. at ¶¶23-25). On October 19, 2019, Plaintiff submitted two separate grievances regarding the allegedly false and unjustified tickets (*Id*. at ¶27).

Plaintiff further alleges that on October 23, 2019, Defendant Winks issued Plaintiff a false disciplinary ticket for "damage or misuse to State property" regarding a "hard of hearing" sign that was affixed to Plaintiff's cell (*Id*. at ¶¶28-32). On October 29, 2019, Defendants Heck and Skorch held a hearing on this ticket (*Id*. at ¶34). Plaintiff was not allowed to call witnesses or present a "complete defense" (*Id*. at ¶34). He received 15 days in segregation (*Id*. at ¶38). The prison's mental health staff recommended that he not be placed in segregation because of his mental illnesses (*Id*. at ¶37).

The Court conducted a threshold review of Plaintiff's First Amended Complaint pursuant to 28 U.S.C. §1915A and Plaintiff's case proceeded on the following claims:

> Count 1: First Amendment retaliation claim against Belford, Mims, and Winks for issuing false and unjustified disciplinary tickets.
>
> Count 2: Fourteenth Amendment substantive due process claim against Winks, Heck, and Skorch for issuing and finding Abernathy guilty of a false disciplinary ticket.
>
> Count 3: Fourteenth Amendment procedural due process claim against Winks, Heck, and Skorch for denying Abernathy's request to call witnesses and present evidence at the hearing.

Defendants now move for summary judgment, citing Plaintiff's failure to exhaust his administrative remedies prior to filing this lawsuit. Plaintiff's grievance records reflect that he did not fully exhaust any grievances against Defendants prior to filing suit on November 4, 2019. Plaintiff, however, contends that the grievance process was unavailable to him because of his mental and physical impairments. He believes that there was a conspiracy against him at Pinckneyville to "hide or lose" his grievances (Doc. 102-4). He also contends that the exhaustion requirement should not apply to his claims because he was not in prison when counsel filed his First Amended Complaint.

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative

remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The Chief Administrative Officer then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

Inmates who intend to file suit are required to follow all steps and instructions in the grievance process before filing with the Court in order to "[allow prisons] to address complaints about the program [they administer] before being subjected to suit, [reduce] litigation to the extent complaints are satisfactorily resolved, and [improve] litigation that does occur by leading to the

preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). However, an inmate is only required to exhaust the administrative remedies that are available to him. *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022) (internal citations and quotations omitted).

### Plaintiff's Relevant Grievances

In their Statement of Material Facts, Defendants identify 13 grievances submitted by Plaintiff at Pinckneyville regarding the allegations in his Complaint. Only three of those grievances were submitted at Pinckneyville prior to Plaintiff filing suit.

**Grievance 3477-10-19 (Doc. 92-4, p. 138, 139)**

Plaintiff submitted this grievance at Pinckneyville on October 8, 2019. He described the October 3, 2019 ticket that he received from Defendant Belford. The grievance officer recommended the denial of the grievance and the Warden concurred on November 20, 2019.

**Grievance 3478-10-19 (Doc. 92-4, p. 140-142)**

Plaintiff submitted this grievance at Pinckneyville on October 14, 2019. He described the ticket he received from Defendant Mims on October 4, 2019. The grievance officer recommended the denial of the grievance and the Warden concurred on November 20, 2019.

**Grievance 3654-11-19 (Doc. 92-3, p. 3)**

This grievance was apparently not retained in Plaintiff's grievance records at Pinckneyville, though it was noted on Plaintiff's grievance receipt log. According to the grievance receipt log, Plaintiff submitted this grievance on November 4, 2019. He raised issues related to the disciplinary tickets he received on October 3, 2019 and October 23, 2019. The grievance officer returned the grievance to Plaintiff on December 10, 2019, noting that it was a duplicate grievance.

### *Pavey* Hearing

In response to questioning by defense counsel, Plaintiff described the grievance process at Pinckneyville. He testified that "as soon as things happen to me I write the grievance." Plaintiff

would first send the grievance to his counselor by placing it in a box designated for counselors. Grievances had to be written on a specific form, and there was a specific room at Pinckneyville where Plaintiff could obtain those forms. After receiving a response from his counselor, Plaintiff would then forward the grievance to the grievance officer. Plaintiff testified that typically, the grievance officer gave him "the run around" when he/she responded, classifying the grievance as "moot" or unable to be substantiated because witnesses cannot be located. Then Plaintiff would send it to the ARB in Springfield.

In response to questioning from his own attorney, Plaintiff explained that he suffers from headaches and body cramps. He struggles with memory loss "daily." Because of his memory loss and headaches, Plaintiff felt confused by the grievance process at Pinckneyville. He felt like he was "getting the run around" and that there was a conspiracy related to responding to his grievances, or mismanagement. He would receive responses that say "out of time frame" after he had been waiting for a response for six months. He was designated as being "SMI" (having a serious mental illness) at that time.

In response to questioning by the undersigned, Plaintiff testified that he sent some grievances to the ARB. If he could not meet the deadline for appealing to the ARB, he would explain the circumstances that caused him to miss the deadline.

### Discussion

For decades, courts have interpreted the PLRA's exhaustion requirement with consistent guideposts. The exhaustion requirement "give[s] the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) (emphasis in the original) (*citing Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006); *Schillinger v. Kiley*, 954 F.3d 990, 995-96 (7th Cir. 2020)). The PLRA does not permit a "sue first, exhaust later" approach. *Id.* at 984 (*citing Ford v. Johnson*, 362 F.3d 395, 398-400 (7th Cir. 2004). An inmate is only required to exhaust the remedies that are available to him. *Lewis v. Washington*, 300 F.3d

829, 833 (7th Cir. 2002). The Seventh Circuit takes "a strict compliance approach to exhaustion." *Crouch*, 27 F.4th at 1320 (internal quotations and citations omitted).

Certain parameters exist (and make sense) within these guideposts. For example, the plain language of the PLRA imposes the exhaustion requirement on inmates who are incarcerated at the time litigation "begins," not inmates who were incarcerated at the time of their injury and then released before filing suit. *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998); *Dixon v. Page*, 291 F.3d 485, 491 n. 1 (7th Cir. 2002). Another parameter: when an inmate files an amended complaint that raises a new claim against a new defendant, the inmate may proceed if he exhausted his administrative remedies *after* filing his original complaint, but *before* he filed for leave to amend the complaint. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020).

Here, Plaintiff urges the undersigned to adopt a new (to this Circuit) parameter to the exhaustion requirement and find that the exhaustion requirement no longer applies to a formerly incarcerated inmate who filed an amended complaint after he was released from prison. *Jackson v. Fong*, 870 F.3d 928, 934 (9th Cir. 2017) (*citing Jones*, 549 U.S. at 222-24); *Garrett v. Wexford Health*, 938 F.3d 69, 88 (3d Cir. 2019). This approach is used in the Ninth and Third Circuits. *Id*. The Seventh Circuit has not had the opportunity to rule on this approach.

The undersigned acknowledges the surplus of authority describing the nature of an amended complaint, that it "completely supersedes an earlier complaint, rendering the original complaint non-existent and a nullity." *Garrett*, 938 F.3d at 82 (internal citations omitted). As the Third Circuit explained, "[i]t has long been the rule then that where a party's status determines a statute's applicability, it is his status at the time of the amendment and not at the time of the original filing that determines whether a statutory precondition to suit has been satisfied." *Id*. However, hinging an amended complaint's exhaustion requirement on an incarcerated plaintiff's subsequent relocation-instead of hinging it on where he was located when he originally *brought* the claim[s]-presents a nebulous task for district courts. Since filing the First Amended Complaint, Plaintiff

has returned to prison. If he filed yet another amended complaint while he is still in prison, should the Court once again entertain Defendants' exhaustion defense? Such an approach would be an inefficient use of the Court's (and the parties') time and resources.

Hinging the exhaustion requirement on Plaintiff's location when he first *brought* the claims in his Complaints(s) is supported by the plain language of the PLRA's exhaustion requirement, that "no action shall be brought with respect to prison conditions under section 1983…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted." 42 U.S.C. §1997e(a).[1] Moreover, hinging the exhaustion requirement on Plaintiff's location when he first *brought* the claims in his Complaint(s) comports with Seventh Circuit precedent. The claims in Plaintiff's amended complaint are the same claims that were alleged in his original complaint.[2] If he had added new claims in the amended complaint, then his status at the time those new claims were *brought* would dictate whether the exhaustion requirement applied to the new claims. *Chambers*, 956 F.3d at 984.

Accordingly, the Court finds that the PLRA exhaustion requirement applies to Plaintiff's claims in the First Amended Complaint because Plaintiff was incarcerated when he first filed those claims in his original Complaint. The Court now turns to Plaintiff's argument regarding whether administrative remedies where available to him at Pinckneyville.

Plaintiff testified that his memory loss, body aches, and headaches kept him from staying "focused" during the grievance process and points the undersigned to another case he filed in this court that is pending before Magistrate Judge Beatty. In that case, Defendants filed a Motion for

---

[1] The U.S. Supreme Court once referred to the phrase "no action shall be brought" as "boilerplate language" in the PLRA. *Jones*, 549 U.S. at 220. This reference was made while explaining why the use of the word "action" did not mean a prisoner's entire lawsuit should be dismissed simply because he failed to exhaust only one of multiple claims. *Id*. at 219-221.

[2] Plaintiff added a new defendant-Diane Skorch-in the First Amended Complaint. However, Plaintiff alleged in the original complaint that he was issued a false disciplinary ticket on October 23, 2019 and denied due process at the subsequent disciplinary hearing, which are the same allegations in Counts 2 and 3 against Defendant Skorch in the First Amended Complaint.

Summary Judgment on the issue of exhaustion, and Plaintiff argued that his mental impairments kept him from understanding and participating in the grievance process. *Abernathy v. Myers, et al.*, Case No. 19-cv-1062, 2021 WL 3566678, *6 (S.D. Ill. Aug. 12, 2021). Notably, however, in that case Plaintiff *did* fully exhaust at least one grievance prior to filing suit; he just simply failed to mention the defendant doctor by name in the grievance (which is not necessarily required). *Id*. at *8, f.n. 4. After Plaintiff filed suit, he saw a new physician, and he attempted to fully exhaust a grievance regarding that physician before adding the physician to the suit. *Id*. at *4. The ARB did not consider the grievance because "this office previously addressed this issue" and "grievance was not sent to the ARB by offender." *Id*. Judge Beatty denied Defendants' Motion for Summary Judgment, noting that Plaintiff did the best he could to fully exhaust grievances despite his mental impairments. *Id*. at *8.

In this case, however, Plaintiff did not attempt to exhaust his administrative remedies prior to filing suit. The events that gave rise to this suit occurred from October 3-29, 2019. Plaintiff submitted one grievance on October 8, 2019, another on October 14, 2019, and one on November 4, 2019. Instead of waiting for a response to those grievances, he filed suit on November 4, 2019.

Plaintiff's testimony and medical records do not create a genuine issue of material fact regarding whether administrative remedies were available to him at Pinckneyville. Despite his mental impairments, and his fear that correctional officers were conspiring against him, the record reflects that Plaintiff utilized the grievance process frequently. He submitted 28 grievances at Pinckneyville from October-December 2019. He sent 21 grievances to the ARB in 2019 and 2020. The issue in this case-as opposed to the issue before Judge Beatty-is not whether Plaintiff could remember all of the rules that must be followed in the grievance process, but that he simply filed this lawsuit too soon. Nothing in the record suggests that Plaintiff's mental and/or physical impairments kept him from remembering that he had to submit a grievance to the prison *and* then

to the ARB before filing suit. Consequently, the grievance process was available to Plaintiff. He just did not attempt to complete it.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 91) is GRANTED. Plaintiff's claims against Defendants are DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 2, 2023**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**